Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**FINVEST CAPITAL FUND, INC.,**

                    Plaintiff,

           v.

**SOLID BOX, LLC, AHMET SUTCU, ABDURRAHMAN SUTCU and HUZEYFE SUTCU,**

                    Defendants.

Civil Action No. 20-06296 (ES) (MAH)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Finvest Capital Fund, Inc.'s ("Plaintiff" or "Finvest") unopposed motion for default judgment against defendant Solid Box, LLC ("Solid Box") and co-defendants Ahmet Sutcu, Abdurrahman Sutcu, and Huzeyfe Sutcu (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 14 ("Motion")). The Court has considered Finvest's submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Finvest's Motion is GRANTED-IN-PART and DENIED-IN-PART.

**I.    Background**

Finvest is a Canadian corporation with its principal place of business in Ontario, Canada. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 1). Finvest is an investment management company that provides funding for commercial business ventures. (*Id.* ¶ 9). Solid Box is a limited liability company organized under the laws of and maintaining its principal place of business in New Jersey. (*Id.* ¶ 2). Ahmet, Abdurrahman, and Huzeyfe are members of Solid Box and residents of

New Jersey. (*Id.* ¶¶ 3–5).

This suit arises from a loan facility agreement entered into between Finvest and Solid Box on April 19, 2019. (*Id.* ¶¶ 11–18, Compl. Ex. A ("Loan Agreement" or "Loan Agmt."[1])). Solid Box sought funding for the alleged business purpose of importing and distributing corrugated boxes from Turkey. (Compl. ¶¶ 10 & 39). Pursuant to the Loan Agreement, from April 22, 2019 through August 6, 2019, Finvest made eight loans to Solid Box totaling $576,000. (*Id.* ¶¶ 11 & 13). The loans were disbursed as follows: (i) the first on April 22, 2019, in the amount of $100,000; (ii) the second on April 27, 2019, in the amount of $90,000; (iii) the third on May 16, 2019, in the amount of $60,000; (iv) the fourth on June 11, 2019, in the amount of $100,000; (v) the fifth on June 26, 2019, in the amount of $40,000; (vi) the sixth on July 5, 2019, in the amount of $60,000; (vii) the seventh on July 31, 2019, in the amount of $67,000; and (viii) the eighth on August 6, 2019, in the amount of $59,000. (*Id.* ¶ 28; Compl. Ex. B ("Loan Disbursement Chart")). Under the Loan Agreement, Solid Box agreed to repay the loans four months from the date each loan was made, with interest at 16.53% with respect to each loan. (Compl. ¶ 14; Loan Agmt. §§ 1.1, 6.1.1 & 8.1.1).

Ahmet signed the Loan Agreement on behalf of Solid Box. (Loan Agmt. at 21). Ahmet, Abdurrahman, and Huzeyfe also executed a personal guaranty of Solid Box's obligations under the Loan Agreement and agreed to reimburse Finvest for all liabilities of Solid Box. (Compl. ¶¶ 21 & 25; *id.* at 24–25 ("Personal Guaranty") at 1). To date, none of the loans have been repaid. (Compl. ¶ 15). Finvest has acknowledged this breach and demanded payment from Solid Box for the loans and interest accrued, but Defendants allegedly "failed and refused to pay the same." (*Id.*

---

[1] Unless otherwise specified, citations to docket entry number 1 refer to the pagination generated by the Court's Electronic Case File system.

¶¶ 16–17).

Plaintiff filed the Complaint on May 22, 2020, asserting claims for (i) breach of contract (Count I); (ii) action on guaranty (Count II); (iii) quantum meruit (Count III); (iv) unjust enrichment (Count IV); (v) misrepresentation (Count V); and (vi) account stated (Count VI). (*Id.* ¶¶ 9–49). After Defendants' time to answer or otherwise respond to the Complaint passed and on July 1, 2020, Finvest filed a request for entry of default against Defendants. (D.E. Nos. 9–12). Pursuant to Federal Rule of Civil Procedure 55(b), the Clerk of Court entered default on July 2, 2020. On July 22, 2020, Finvest filed the instant Motion. (D.E. No. 14).

## II.     Legal Standard

Before entering default judgment, the Court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Unimaven, Inc. v. Texas TR, LLC*, No. 17-12008, 2020 WL 5406162, at *3 (D.N.J. Sept. 8, 2020) (quoting *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018)). Although the Court must accept well-pleaded factual allegations as true for purposes of liability, the plaintiff must prove damages with further proofs. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). If a court finds that evidentiary support appears to be lacking, it may order or permit the plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013).

In addition, the Court must consider three factors prior to granting default judgment: "(1) the prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a

meritorious defense, and (3) the culpability of the party subject to default." *Jackson Hewitt Inc. v. Flores*, No. 19-9210, 2020 WL 468394, at *1 (D.N.J. Jan. 27, 2020) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). A meritorious defense is one that "if established at trial, would completely bar a plaintiff's recovery." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062 at *2 (D.N.J. July 24, 2012) (citing *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)).

### III. Discussion

#### A. Jurisdiction and Service

The Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties" before entering a default judgment against a party who has failed to respond to a complaint. *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). The Court finds that it has both subject matter jurisdiction and personal jurisdiction over Defendants.

##### i. Subject Matter Jurisdiction

Under 28 U.S.C. § 1332(a)(2), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." Jurisdiction under § 1332 requires complete diversity of citizenship, such that "no plaintiff [is] a citizen of the same state as any defendant." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009).

Here, Finvest is a corporation chartered under the laws of the Province of Ontario, Canada, with its principal place of business located in Canada. (Compl. ¶ 1). Solid Box is a limited liability

company formed under the laws of the State of New Jersey, with its principal place of business in New Jersey. (*Id.* ¶ 2). Each of the individual defendants are residents of the state of New Jersey. (*Id*. ¶¶ 3–5). Finvest plausibly alleges an amount in controversy exceeding $75,000. (*Id.* ¶¶ 11–18). Accordingly, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

### ii. Personal Jurisdiction & Service of Process

Finvest alleges that defendants Ahmet, Abdurrahman, and Huzeyfe are citizens of New Jersey, and that defendant Solid Box is a limited liability company organized and existing under the laws of the State of New Jersey, operating its principal place of business at 130 Kipp Avenue, Unit 20, Elmwood Park, NJ. (*Id.* ¶¶ 2–5). Thus, the Court has personal jurisdiction over Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (with respect to personal jurisdiction of a company, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotation and citation omitted) (alteration in original).

Nevertheless, the Court cannot exercise its jurisdiction unless "the complaint and summons[es] are properly served upon the defendant[s]." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991). A limited liability company "must be served by 'delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.'" *Cerrato v. Seaboard Corp. Servs., LLC*, No. 19-9448, 2020 WL 2559535, at *1 (D.N.J. May 20, 2020) (quoting Fed. R. Civ. P. 4(h)(1)(B)).

Finvest maintains that its process server delivered a copy of the summons and Complaint to Ahmet, Solid Box's "manager/member/registered agent," at Solid Box's principal place of

business. (D.E. No. 5). Additionally, Ahmet, Abdurrahman, and Huzeyfe were each served by personal service at their respective residences. (D.E. Nos. 6–8). The Court thus finds that service of process was proper. *See* Fed. R. Civ. P. 4(e)(2)(A) & (h)(1)(B); *see also Branch Banking & Tr. v. E. Jersey Commercial, LLC*, No. 19-13940, 2020 WL 1876006, at *1 (D.N.J. Apr. 15, 2020).

### B. Sufficiency of the Pleading

Before granting default judgment, the Court must determine that the plaintiff has stated a sufficient cause of action. *See Wallace v. Fed. Emps. of United States Dist. Court, EDPA*, 325 F. App'x 96, 101–02 (3d Cir. 2009). The Court must decide whether the plaintiff has established that "the essential elements of the pleaded claims are present and state[d] factual allegations in support of these elements." *Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 849 (D.N.J. 2008) (citing *Comdyne I, Inc.*, 908 F.2d at 1149); *see also Triboro Hardware & Indus. Supply Corp. v. Greenblum*, No. 19-13416, 2020 WL 7074383, at *3 (D.N.J. Dec. 3, 2020) ("Courts in this district turn to the familiar Federal Rule 12(b)(6) standard in determining whether a sufficient cause of action has been stated.").

As an initial matter, the Court must analyze Plaintiff's breach of contract and breach of guaranty claims under the law of Province of Ontario, Canada. Pursuant to the *Erie* doctrine and the Rules Enabling Act, 28 U.S.C. § 2072, federal courts sitting in diversity apply federal procedural law and state substantive law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427–28 (1996). Thus, a court sitting in diversity will apply the choice-of-law principles of the forum state. Under New Jersey law, contracting parties' choice of law clauses are enforceable unless they conflict with New Jersey public policy. *Schunkewitz v. Prudential Secs, Inc.*, 99 F. App'x 353, 355 (3d Cir. 2004). Here, the Loan Agreement provides that the contract "shall be

governed by and shall be construed in accordance with the law of the Province of Ontario, Canada." (Loan Agmt. § 21.1). Nothing in the Loan Agreement suggests that the enforcement of this choice-of-law provision conflicts with New Jersey public policy. Indeed, as discussed below, the Court finds that New Jersey and Ontario have a fairly similar cause of action for breach of contract such that enforcing Ontario law in this instant case would not conflict with New Jersey public policy.

Moreover, under Federal Rule of Civil Procedure 44.1, the Court "may consider any relevant material or source" in determining foreign law, "including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." "This rule provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Bel–Ray v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). For purposes of this Opinion, the Court considered Ontario law presented by Finvest and conducted its own research and examined treatises and case law where the Court finds that Finvest's legal support is insufficient.

       *i. Breach of Contract*

Under Ontario law, the elements of a cause of action for breach of contract are: (1) the plaintiff and the defendant are parties to a validly formed contract; and (2) the defendant fails to perform his or her obligations under the contract. *Boal v. International Capital Management Inc.*, 2021 ONSC 651.[2] A plaintiff can succeed on a breach of contract claim without asserting damages, but where, as here, "[i]n a case where damages are sought, the proof of those damages is . . . a fundamental element of the cause of action." *Rinc Consulting Inc. v. Grant Thornton LLP*,

---

[2] Available at: https://www.canlii.org/en/on/onsc/doc/2021/2021onsc651/2021onsc651.html?resultIndex=1.

2019 ONSC 1844.[3]

A contract is created "when an offer is accepted." *Eltaib and Touram*, 2010 ONSC 834.[4] If the parties form a written contract "whose wording reveals a plain and unambiguous intention," the inquiry into whether a valid contract was formed is usually satisfied. Warren H.O. Mueller, *et al.*, *CED, An Overview of the Law—Contracts*, Ch. I.2.[5] Moreover, "[a] court should interpret a plainly-worded document by presuming that the parties intended the legal consequences of their words." *In re Finova Capital Corp.*, 356 B.R. 609, 624 (Bankr. D. Del. 2006) (quoting *Canadian Premier Hldgs. Ltd. v. Winterthur Canada Fin. Corp.*, 132 O.A.C. 172, 2000 O.A.C. Lexis 331, *10 (Ont. Ct. App. May 11, 2000)). Additionally, Ontario courts have understood a personal guaranty to be a contract, but it "must be in writing to be enforceable." *Entry Point Investments v. Invis Inc.*, 2015 ONSC 2009,[6] *aff'd* 2015 ONCA 701. As such, the "ordinary principles of contract law apply to a creditor's breach." *Bank of Montreal v. Javed*, 2016 ONCA 49. If a breach of contract occurs, "[t]he primary rule… [is] that a wronged plaintiff is entitled to be put in as good a position as he would have been in if there had been proper performance by the defendant[.]" *Red Deer College v. Michaels*, [1976] 2 S.C.R. 324.[7]

The written contract submitted with the Complaint shows that Finvest unambiguously agreed to loan Solid Box $576,000, and Solid Box agreed to repay those loans. (Compl. ¶¶ 11–18; *see generally* Loan Agmt.). Ahmet signed the Loan Agreement on behalf of Solid Box, and

---

[3]   Available at: https://www.canlii.org/en/on/onsc/doc/2019/2019onsc1844/2019onsc1844.html?resultIndex=1.

[4]   Available at: https://www.canlii.org/en/on/onsc/doc/2010/2010onsc834/2010onsc834.html?resultIndex=1.

[5]   Available at: https://www.westlawnextcanada.com/academic/ced/contracts.

[6]   Available at: https://www.canlii.org/en/on/onsc/doc/2015/2015onsc2009/2015onsc2009.html?autocompleteStr=2015%20onsc%202009&autocompletePos=1.

[7]   Available at: https://www.canlii.org/en/ca/scc/doc/1975/1975canlii15/1975canlii15.html?resultIndex=1.

Ahmet, Abdurrahman, and Huzeyfe all signed a personal guaranty agreeing to reimburse Finvest for liabilities incurred by Solid Box. (Compl. ¶¶ 20–25; Loan Agmt. at 21; Personal Guaranty at 24–25). After the contract was formed, Finvest disbursed to Solid Box eight loans totaling $576,000. (Compl. ¶ 13; *see* Loan Disbursement Chart). Yet, Defendants failed to repay each loan four months from the dates the loans were made at the agreed-upon interest rate. (Compl. ¶¶ 12–14; Loan Agmt. at 16). As a result, Finvest alleges that it is owed $683,998.81, consisting of principal in the amount of $576,000 and interest in the amount of $107,998.81, plus additional interest at the per diem rate of $264.48 multiplied by the number of days elapsed between July 20, 2020 until the entry of judgment. (D.E. No. 14-1 ("Binici Cert.") at ¶¶ 16–18). Accordingly, the Court finds that Finvest has properly alleged a breach of contract claim against Defendants.

    *ii. Remaining Claims*

    Finvest alleges six causes of action: (i) breach of contract (Count I); (ii) action on guaranty (Count II); (iii) quantum meruit (Count III); (iv) unjust enrichment (Count IV); (v) misrepresentation (Count V); and (vi) account stated (Count VI). (Compl. ¶¶ 9–49). Yet Finvest moves for default judgment only on the breach of contract claim with respect to Solid Box and on the action on guaranty claim with respect to the individual defendants. (*See generally* Pl. Mov. Br.). The Court cannot enter final judgment unless all claims are "either resolved or withdrawn." *See U.S. Golf Ass'n v. ISaAC Scoring Sys., LLC*, No. 09-1848, 2010 WL 323203, at *3 (D.N.J. Jan 20, 2010) (citing Fed. R. Civ. P. 54(b)). Finvest is thus instructed to inform the Court how it intends to proceed with its remaining four causes of action.

  **C. Appropriateness of Default Judgment**

    To determine whether granting default judgment is proper, the Court "must make explicit factual findings as to: (1) the prejudice to the plaintiff if default is denied, (2) whether the defendant

appears to have a meritorious defense, and (3) the culpability of the party subject to default." *Jackson Hewitt Inc.*, 2020 WL 468394, at *1 (citing *Chamberlain*, 210 F.3d at 164). Courts have noted, however, that "these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default." *Days Inns Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (citation omitted). Where, as here, a defendant failed to defend, courts have held that they are "not in a position then to determine whether [the defendant has] a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* (internal quotation marks and citation omitted). Indeed, a defendant's "[r]eckless disregard for repeated communications from plaintiff[] . . . can satisfy the culpable conduct standard." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (internal quotation marks and citation omitted). Nothing in the record indicates that Defendants' failure to participate in the instant action was due to anything other than culpable conduct. *See Wyndham Hotels & Resorts v. J&S Pride, LLC*, No. 15-4300, 2016 WL 1366910, at *4 (D.N.J. Apr. 5, 2016); *see also Prudential Ins. Co. of America v. Taylor*, No. 08-2107, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[W]hen there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted.").

Moreover, Finvest will be prejudiced if default judgment is not granted. Where, as here, a defendant fails to respond to the complaint or otherwise appear in this case, denying default would prejudice the plaintiff because there would be no recourse against the defendant. *See Days Inns Worldwide, Inc.*, 2007 WL 1674485, at *5; *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff "will suffer prejudice if the Court

does not enter default judgment as [p]laintiff has no other means of seeking damages for the harm allegedly caused by [d]efendant"); *see also J&J Sports Prods., Inc v. Z & R Corp.*, No. 19-12189, 2020 WL 4529995, at *3 (D.N.J. Aug. 6, 2020).

Accordingly, as all three factors weigh heavily in favor of default judgment, the Court finds default judgment against Defendants is proper.

### D. Damages

"While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted). Moreover, because the Loan Agreement does not address the applicability of prejudgment interests, the award of prejudgment interest is governed by New Jersey law. *See Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). In New Jersey, "a trial judge in a contract action has discretion to award prejudgment interest in accordance with equitable principles." *Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 204 (3d Cir. 2007) (citing *County of Essex v. First Union National Bank*, 186 N.J. 46 (2006)).

Here, Finvest seeks (i) the principal sum of $576,000; (ii) interest in the amount of $107,991.81, accrued from the dates each loan was made until July 20, 2020, two days before the Motion was filed; and (iii) an additional $264.48 per day from July 20, 2020 to the date of entry of judgment. (Pl. Mov. Br. at 7).[8]

The Court finds that Finvest is entitled to recover the principal amount it seeks. Finvest

---

[8] Finvest also seeks post-judgment interest in its proposed order (D.E. No. 14-3 at 2), but it fails to address it either in its brief or in any of its supporting documents. The Court will thus disregard Finvest's request for post-judgment interest.

provided sufficient evidence showing that the principal amount was disbursed to Solid Box through eight loans between April 22, 2019 and August 6, 2019 totaling $576,000. (Loan Agmt. at 12; Binici Cert. ¶ 11; Loan Disbursement Chart). Additionally, the Court agrees with Finvest's calculation on interest accrued on the eight loans, which totals $107,991.81. Specifically, Mr. Nizamenttin Binici, Finvest's president, calculated the interest accrued from the date each loan was made until July 20, 2020 at the agreed upon interest rate of 16.53%. (Loan Agmt. §§ 1.1 & 8.1.1; Binici Cert. ¶¶ 16–18).

Finally, the Court agrees that Finvest is entitled to additional interest at $264.48 per day from July 20, 2020. This per diem interest amount is "calculated by multiplying the amount of each loan by an annual interest rate of 16.53% and dividing the product by 360," which is the number of days per year the parties agreed upon under the Loan Agreement. (Binici Cert. ¶ 17; Loan Agmt. § 15.1). The Court disagrees, however, that the per diem interest should be paid until "the entry of judgment." (*See* Pl. Mov. Br. at 7). As discussed above, the Court cannot enter a final judgment until all Finvest's claims are either resolved or withdrawn. Because the delay to the entry of judgment is caused by Finvest's failure to properly proceed with all its claims, and in exercising Court's discretion in awarding prejudgment interest in accordance with equitable principals, the Court will award additional interest at $264.48 per day from July 20, 2020 until the date this Opinion and the accompanying Order are entered.

To sum, the Court finds that Finvest provided an adequate basis for the request damages of $683,998.81 plus interest of $264.48 per day from July 20, 2020 until the entry of this Opinion and the accompanying Order. *See Jackson Hewitt Inc.*, 2020 WL 468394, at *3 (finding that plaintiff's request for interest accrued from a contract breach was supported by record evidence); *Bd. of Trustees of CWA/ITU Negotiated Pension Plan v. Am. Plus Printers, Inc.*, No. 19-12794,

2020 WL 2794342, at *6 (D.N.J. May 29, 2020) (finding evidence of damages sufficient where plaintiff attached spreadsheet detailing interest calculations).

## IV.     Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED-IN-PART and DENIED-IN-PART.  An appropriate Order follows.


Date: March 26, 2021

                                                          *s/Esther Salas*
                                                          **Esther Salas, U.S.D.J.**